IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHARLES FRITSCH, individually and on behalf of all others similarly situated, and on behalf of the Plan,<br><br>Plaintiff,<br><br>v.<br><br>CRACKER BARREL OLD COUNTRY STORE, INC.,<br><br>Defendant. | Case No. 1:25-cv-540 |

## CLASS AND REPRESENTATIVE ACTION COMPLAINT

Plaintiff Charles Fritsch ("Plaintiff") brings this class action complaint against Cracker Barrel Old Country Store, Inc. ("Cracker Barrel" or "Defendant"), on behalf of himself and all others similarly situated, and on behalf of the Plan. Plaintiff makes the following allegations based upon personal knowledge as to his own actions and upon information and belief as to all other matters.

1. Cracker Barrel operates a chain of restaurants throughout the United States. Headquartered in Lebanon, Tennessee, it employs more than 75,000 people across approximately 650 locations.

2. At all times relevant to this suit, all regular employees of Cracker Barrel and their dependents have been eligible to receive health insurance coverage by participating in a group health plan sponsored and administered by the company, referred to herein as "the Plan".

3. For those employees and their dependents to participate in these plans, they must identify whether they are a tobacco user. Those who do use tobacco products are required to pay an additional fee equal to 25% of their total medical plan costs to maintain coverage.

4. Fees of this sort, frequently referred to as "tobacco surcharges", have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act (ERISA), applied to medical plans by the Patient Protection and

Affordable Care Act, and implementing regulations. Cracker Barrel did not do so, and therefore collected the tobacco surcharge in violation of the law and in violation of its duties to plan participants and the Plan itself.

5. More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program". And to qualify as a compliant wellness program, a company must offer a "reasonable alternative standard", usually in the form of a tobacco cessation program, completion of which allows participants to avoid the surcharge.

6. By law, a compliant wellness program's reasonable alternative standard must allow participants to receive the program's "full reward"; that is, avoid the surcharge for the entire plan year upon completion of the alternative standard, and must provide notice that such an alternative program exists in every communication regarding the surcharge. This notice must also include a statement that recommendations of an individual's personal physician in formulating a reasonable alternative standard will be accommodated.

7. But a participant in Cracker Barrel's medical plan who ceased tobacco use would only be eligible to avoid the surcharge on a going-forward basis and thus could not earn the "full reward"—*i.e.*, avoiding the surcharge for the entire plan year. Further, Cracker Barrel's plan materials used for communicating information about the surcharge with participants make no mention of an opportunity to earn the full reward for the entire plan year by completing a reasonable alternative standard, instead informing participants that successful completion of the cessation program would remove the surcharge only prospectively. And those materials do not include a disclosure that the recommendations of an individual's personal physician would be accommodated. Thus, the surcharge violates ERISA's anti-discrimination requirements, and its collection by Cracker Barrel was and remains unlawful.

8. Plaintiff Charles Fritsch was formerly a full-time Cracker Barrel employee, working at the company's Harrison, Ohio restaurant in 2024 and 2025, who was required to pay the illegal tobacco surcharge to maintain health insurance coverage. He brings this lawsuit on

behalf of himself and all similarly situated plan participants and beneficiaries, seeking to have these unlawful fees returned, and for plan-wide relief under 29 U.S.C. § 1109.

## PARTIES, JURISDICTION, AND VENUE

9. Plaintiff Charles Fritsch is a resident and citizen of the state of Kentucky. At all times relevant to this suit, he was employed by Cracker Barrel in the state of Ohio and has paid the Plan's premiums and tobacco surcharge within the state of Ohio.

10. Defendant Cracker Barrel is organized under the laws of Tennessee and has its principal place of business in Tennessee.

11. At all times relevant to this lawsuit, Cracker Barrel operated the Plan, which was available for Cracker Barrel employees and their dependents. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

12. Plaintiff was a participant in the Plan pursuant to 29 U.S.C. § 1102(7).

13. This Court possesses subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. This Court also possesses subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (3) Defendant and at least one class member are citizens of different states, and/or are a citizen or subject of a foreign state, and at least one class member is a citizen of a state.

14. This Court possesses personal jurisdiction over Cracker Barrel in this case because Plaintiff was employed, participated in the Plan, and paid the surcharge at issue in the state of Ohio. Further, ERISA authorizes nationwide service of process. 29 U.S.C. § 1132(e)(2).

15. Venue is proper in this district under 29 U.S.C. § 1132(e)(2) because this is the district where Plaintiff worked for Cracker Barrel and participated in the Plan, and where the wrongful acts occurred.

# FACTUAL ALLEGATIONS

### a. Cracker Barrel's Tobacco Surcharge is a *Prima Facie* Violation of ERISA's Anti-Discrimination Rule.

16. As a baseline rule, and to broaden access to affordable health insurance coverage, the Patient Protection and Affordable Care Act amended ERISA to prohibit any health insurer or medical plan from discriminating against any participant in providing coverage or charging premiums based on a "health status-related factor", including the use of tobacco. Pursuant to this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

17. On its face, Cracker Barrel's tobacco surcharge programs violate this provision. Plaintiff and all others similarly situated were, at all times relevant, required to pay an additional "premium or contribution" equal to 25% of their total medical plan costs, based on a "health status-related factor", that being their use of tobacco products.

18. Specifically, at all times relevant to this lawsuit, pursuant to Cracker Barrel's enrollment rules for the Plan, any employee or covered dependent who used use any tobacco products were required to declare themselves to be tobacco users as part of the enrollment process and were subsequently required to pay the tobacco surcharge to maintain coverage.

19. Payment of the tobacco surcharge was required for Plaintiff and all others similarly situated to remain insured under the Plan. Plaintiff and all others similarly situated have in fact paid the surcharge.

20. Cracker Barrel is and has been required to make contributions to the Plan to ensure that it remain adequately funded. By collecting the tobacco surcharge, the company has reduced the amount of its own contributions, thereby increasing its profits.

21. At all times relevant to this lawsuit, Cracker Barrel has maintained sole control of its tobacco surcharge program, including by determining which participants are required to pay the surcharge, withholding participants' funds from their paychecks to pay the surcharge, and determining which employees (if any) are reimbursed for their payment of the tobacco surcharge.

### b. Cracker Barrel Cannot Avail Itself to ERISA's Safe Harbor for Wellness Programs.

22. As an exception to its anti-discrimination rule, ERISA carves out protection for "programs of health promotion and disease prevention", also known as "wellness programs." 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

23. But to qualify as a lawful wellness program, a plan must fully comply with a set of statutory and regulatory requirements. Those requirements concern (1) the frequency of the opportunity for a participant to qualify for the reward; (2) the size of the reward; (3) reasonable design of the program; (4) uniform availability and reasonable alternative standards; and (5) notice of the availability of a reasonable alternative standard. 29 C.F.R. § 2590.702(f). These regulations "set forth criteria for an *affirmative defense* that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158 at 33160 (June 3, 2013) (emphasis added). Every one of the requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

24. Cracker Barrel's tobacco surcharge program did not and do not satisfy the requirements that it provide a reasonable alternative standard, nor does it provide notice of a reasonable alternative standard. As a result, Cracker Barrel cannot meet each element of its affirmative defense.

25. Consequently, Cracker Barrel is not entitled to safe harbor protection for operating a compliant wellness program and its assessment of the tobacco surcharge fees constitutes unlawful discrimination based on a health status-related factor.

5

### c. Cracker Barrel's Tobacco Surcharge Program Does Not Provide for a Reasonable Alternative Standard

26. *First,* by law, a tobacco surcharge is an example of an "outcome-based" and "health contingent" wellness program. 78 Fed. Reg. 33158 at 33161 ("An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking . . .) in order to obtain a reward."); *see also id*. at 33159 ("Examples of health-contingent wellness programs in the proposed regulations included a program that imposes a premium surcharge based on tobacco use")

27. To be lawful, such a program must provide for "[u]niform availability and reasonable alternative standards." 29 C.F.R. § 2590.702(f)(4)(iv). "[A] reasonable alternative standard must be provided to all individuals who do not meet the initial standard, to ensure that the program is reasonably designed to improve health and is not a subterfuge for underwriting or reducing benefits based on health status." 78 Fed. Reg. 33158 at 33160.

28. A common means by which plan administrators attempt to provide a reasonable alternative standard to a tobacco surcharge—and the one employed by Cracker Barrel—is to permit participants to avoid the surcharge by completing a tobacco cessation program.

29. But for a putative alternative standard (such as attending a tobacco cessation program) to be deemed "reasonable" under the law, "[t]he full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). Thus, a participant who meets the alternative standard must be eligible to avoid the surcharge in its entirety for a given plan year.

30. The applicable regulatory guidelines state that "while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, *the plan or issuer must provide the premium discounts for January,*

*February, and March to that individual*.) Plans and issuers have flexibility to determine how to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) as long as the method is reasonable and the *individual receives the full amount of the reward*." 78 Fed. Reg. 33158 at 33163 (emphasis added).

31. But a Plan participant or beneficiary who completed the alternative standard during a given plan year would not be eligible to avoid the entire tobacco surcharge for the year. Instead, he or she could avoid the surcharge on a going-forward basis only and would not be eligible to receive a reimbursement for surcharge payments already made in that plan year.

32. Indeed, one informational notice regarding the Plan expressly states that "employees and covered spouses who choose to participate in the [cessation] program will be able to avoid the tobacco surcharge for the remainder of the plan year in which they complete the program." And the Plan's Summary Plan Description provides that "[o]nce you complete the program, your paycheck deductions . . . will be reduced to the non-tobacco user rate as soon as administratively possible."

34. Because participants and beneficiaries enrolled in the Plan could not receive a retroactive reimbursement to avoid the tobacco surcharge in its entirety, Cracker Barrel does not permit participants to receive the "full reward" and therefore does not provide for a "reasonable alternative standard."

### d. Cracker Barrel Failed to Provide Notice of Availability of a Reasonable Alternative Standard

35. *Second*, to be deemed a lawful wellness program, "[t]he plan or issuer must disclose *in all plan materials describing the terms of an outcome-based wellness program . . .* the availability of a reasonable alternative standard to qualify for the reward." 29 C.F.R. § 2590.702 (emphasis added); 42 U.S.C. § 300gg-4(j)(3)(E). "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158-01 at 33166.

36. But Cracker Barrel's plan materials discussing its tobacco surcharge fees do not disclose the existence of a reasonable alternative standard.

37. As alleged further herein, the Plan's written materials fail to disclose that a participant who completed the cessation program would be eligible for retroactive reimbursement for surcharge payments made during that plan year, and thus eligible to receive the "full reward." Indeed, to the contrary, the relevant written materials notify participants and beneficiaries that upon successful completion of the tobacco cessation program, they can have the surcharge removed only "for the remainder of the plan year."

38. *Third*, under the applicable regulations, "[t]he plan or issuer must disclose in all plan materials describing the terms of an activity-only wellness program . . . contact information for obtaining a reasonable alternative standard and a *statement that recommendations of an individual's personal physician will be accommodated*. 29 C.F.R. § 2590.702(f)(4)(v).

39. Cracker Barrel has disseminated written plan materials that do not include a statement that the recommendations of an individual's physician will be accommodated.

40. Cracker Barrel, then, has not complied with the requirement that it provide notice of the availability of a reasonable alternative standard by which a plan participant could avoid the tobacco surcharge and receive the full reward, or that the recommendations of his or her personal physician would be accommodated. The company cannot then avail itself of the regulatory safe harbor for operating a lawful wellness program.

## CLASS ACTION ALLEGATIONS

41. <u>Class Definition</u>: Plaintiff brings this action individually and on behalf of all other similarly situated individuals. Pursuant to Federal Rules of Civil Procedure 23(b)(3), 23(b)(1)(B), 23(b)(2), and/or 23(c)(4), Plaintiff seeks certification of a class consisting of:

> All individuals within the United States who paid the Plan's tobacco surcharge at any time within the relevant limitations period.

42. Excluded from the Class are the Court and its officers, employees, and relatives; Cracker Barrel and its subsidiaries, officers, and directors; and governmental entities.

43. <u>Numerosity</u>: the Class consists of members so numerous and geographically dispersed that joinder of all members is impracticable, as Cracker Barrel employs tens of thousands of similarly situated individuals across the United States.

44. All members of the Class are ascertainable by reference to objective criteria, as Cracker Barrel has access to addresses and other contact information for Class members that can be used for notice purposes.

45. <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. Indeed, the claims of *every* class member will rise or fall on the question of whether the tobacco surcharge is compliant with all legal requirements, and therefore lawful. Common questions include:

   a. Whether Cracker Barrel's tobacco surcharge discriminates against their group health plans' participants and beneficiaries based on a health status-related factor;

   b. Whether Cracker Barrel's tobacco surcharge programs qualifies for statutory safe harbor protection as a compliant wellness program;

   c. Whether Cracker Barrel can meet every element of its statutory affirmative defense for operating a compliant wellness program;

   d. Whether Cracker Barrel would allow a participant to be retroactively reimbursed for surcharge payments previously made in a given plan year;

   e. Whether all of Cracker Barrel's group health plans' materials describing the tobacco surcharge give notice of a reasonable alternative standard by which a plan participant or beneficiary may receive the full reward;

   f. Whether a plan document that describes the tobacco surcharge but does not disclose an alternative program by which a participant can earn the full reward for the plan year gives notice of a reasonable alternative standard;

   g. Whether a plan document that describes the tobacco surcharge but does not disclose a statement that recommendations of an individual's personal physician will be accommodated gives notice of a reasonable alternative standard;

h.  Whether Cracker Barrel's tobacco surcharge fees violate the law; and

i.  Whether Cracker Barrel breached its fiduciary duties with respect to its collection and retention of the tobacco surcharge funds.

46. <u>Typicality</u>: Plaintiff's claims are typical of other members of the Class because all the claims arise from the same course of conduct by Cracker Barrel —its collection of an unlawful surcharge—and are based on the same legal theories.

47. <u>Adequacy of Representation</u>: Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class members whom he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of Class members and have the financial resources to do so. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

48. <u>Superiority of Class Action</u>: Class treatment is superior to individual treatment, as it will permit a large number of similarly situated persons to prosecute their respective class claims in a single forum, simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

49. To the extent not all issues or claims, including the amount of damages, can be resolved on a class-wide basis, Plaintiff invokes Federal Rule of Civil Procedure 23(c)(4), reserving the right to seek certification of a class action with respect to particular issues, and Federal Rule of Civil Procedure 23(c)(5), reserving the right to divide the class into subclasses.

<b><u>COUNT I – ERISA STATUTORY VIOLATION</u></b><br><b>Unlawful Surcharge – Failure to Provide a Reasonable Alternative Standard</b><br><i>By Plaintiff and the Class</i>

50. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

51. To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in an amount equal to 25% of their total medical plan costs.

52. Cracker Barrel's tobacco surcharge is not and was not a permissible wellness program, because it does not provide for a reasonable alternative standard, in that a tobacco user who completed the designated tobacco cessation program would not be reimbursed for surcharge payments already made during that plan year, and thus would not be eligible to receive the "full reward" of the tobacco surcharge program, that being a reduction for the full cost of the tobacco surcharge.

53. Cracker Barrel cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

54. Cracker Barrel's tobacco surcharge has discriminated against, and continue to discriminate against, participants and beneficiaries enrolled in its group health plan based on a health status-related factor in assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

55. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

56. Plaintiff and class members were required to pay an illegal fee, and Cracker Barrel collected that fee from them in violation of the law. Equity requires that those funds be returned.

## COUNT II – ERISA STATUTORY VIOLATION
**Unlawful Surcharge – Failure to Provide Required Notice**
*By Plaintiff and the Class*

57. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

58. To enroll in the Plan, Plaintiff and class members were required to pay a tobacco surcharge in an amount equal to 25% of their total medical plan costs.

59. Cracker Barrel's tobacco surcharge is not and was not a permissible wellness program, because Cracker Barrel did not give statutorily required notice of reasonable alternative standard, in that:

a. The Plan's written materials discussed the tobacco surcharge, but did not notify participants and beneficiaries that they would be eligible to receive the full reward of the tobacco surcharge program for the plan year, including the retroactive reimbursement of any surcharge fees already paid that plan year, but instead informed them that they would have the surcharge removed on a going-forward basis only; and

b. The Plan's written materials discussed the tobacco surcharge but did not include a statement that recommendations of an individual's personal physician will be accommodated in conjunction with the formation of a reasonable alternative standard.

60. Cracker Barrel cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

61. Cracker Barrel's tobacco surcharge has discriminated against, and continue to discriminate against, plan participants based on a health status-related factor is assessing premiums or contributions, in violation of 29 U.S.C. § 1182(b).

62. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

63. Plaintiff and class members were required to pay an illegal fee, and Cracker Barrel collected that fee from them in violation of the law. Equity requires that those funds be returned.

**COUNT III – ERISA BREACH OF FIDUCIARY DUTY**
**29 U.S.C. § 1109**
*By Plaintiff and the Class, On Behalf of the Plan*

66. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

67. At all times relevant to this lawsuit, Cracker Barrel was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29

U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the Plan and disposition of its assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Plan.

68. Cracker Barrel breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law and in violation of the relevant plan terms, as the receipt of additional funds reduced its own costs associated with funding the Plan and forestalled its own obligations to make contributions thereto.

69. Upon information and belief, Cracker Barrel's responsibilities with respect to the funding of the Plan's claims and administrative expenses relating to their plans' self-funded arrangements equaled the amount by which their plans' claims and administrative expenses exceeded all participant contributions, including the tobacco surcharge funds, Cracker Barrel's collection of the tobacco surcharge funds diminished the amount it had to contribute to the plan, thereby benefiting itself and harming the Plan.

70. As a result of the imposition of the tobacco surcharge, Cracker Barrel enriched itself at the expense of the Plan, thereby resulting in it receiving a windfall.

71. Cracker Barrel breached its fiduciary duties under ERISA in that it:
   a. failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);
   b. failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);
   c. failed to ensure that the assets of the Plan did not inure to the benefit of the employer, in violation of ERISA. *See* 29 U.S.C. § 1103(c);

    d. caused the Plan to engage in transactions that Cracker Barrel knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

    e. dealt with assets of the Plan in Cracker Barrel's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

    f. acted on behalf of a party whose interests were averse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

    g. caused the Plan to require participants to pay premiums or contributions which were greater than such premiums or contributions for a similarly situated participant enrolled in the Plan on the basis of a health status-related factor in relation to the participant or beneficiary in violation of ERISA. *See* 29 U.S.C. § 1182(b).

72. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Cracker Barrel is liable to make good to the Plan all losses to the Plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the Plan, and for such other equitable or remedial relief as is proper.

73. Plaintiff is authorized to bring this action on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2).

## **COUNT IV – ERISA BREACH OF FIDUCIARY DUTY**
**Individual Relief for Fiduciary Violations Under ERISA § 502(a)(3)**
*By Plaintiff and the Class*

74. Plaintiff hereby repeats, reiterates, and incorporates by reference each of the foregoing allegations with the same force and effect as if set forth herein.

75. At all times relevant to this lawsuit, Cracker Barrel was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29

U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the Plan and disposition of its assets by holding in trust the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Plan.

76. Cracker Barrel breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law and in violation of the relevant plan terms, as the receipt of additional funds reduced its own costs associated with funding the Plan and forestalled its own obligations to make contributions thereto.

77. Upon information and belief, Cracker Barrel's responsibilities with respect to the funding of the Plan's claims and administrative expenses relating to their plans' self-funded arrangements equaled the amount by which their plans' claims and administrative expenses exceeded all participant contributions, including the tobacco surcharge funds, Cracker Barrel's collection of the tobacco surcharge funds diminished the amount it had to contribute to the plan, thereby benefiting itself and harming the Plan.

78. As a result of the imposition of the tobacco surcharge, Cracker Barrel enriched itself at the expense of the Plan, thereby resulting in it receiving a windfall.

79. Cracker Barrel breached its fiduciary duties under ERISA in that it:

    a. failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A);

    b. failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D);

    c. failed to ensure that the assets of the Plan did not inure to the benefit of the employer, in violation of ERISA. *See* 29 U.S.C. § 1103(c);

d.  caused the Plan to engage in transactions that Cracker Barrel knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plan, in violation of ERISA. *See* 29 U.S.C. § 1106(a)(1)(D);

e.  dealt with assets of the Plan in Cracker Barrel's own interests in violation of ERISA. *See* 29 U.S.C. § 1106(b)(1);

f.  acted on behalf of a party whose interests were averse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. *See* 29 U.S.C. § 1106(b)(2); and

g.  caused the Plan to require participants to pay premiums or contributions which were greater than such premiums or contributions for a similarly situated participant enrolled in the Plan on the basis of a health status-related factor in relation to the participant or beneficiary in violation of ERISA. *See* 29 U.S.C. § 1182(b).

80. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Cracker Barrel is liable to make good to the Plan all losses to the Plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the Plan, and for such other equitable or remedial relief as is proper.

81. Plaintiff and Class Members are authorized to recover individual equitable relief to remedy these breaches under 29 U.S.C. § 1132(a)(3).

## **REQUEST FOR RELIEF**

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Cracker Barrel as follows:

A. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative, and appoint Plaintiff's counsel as Class Counsel;

B. That the Court order Cracker Barrel to reimburse all persons who paid the tobacco surcharge within the relevant limitations period;

C. That the Court order disgorgement, unjust enrichment, and/or restitution of all payments unlawfully assessed by Cracker Barrel, or, alternatively, the profits earned by Cracker Barrel in connection with its receipt of such unlawful fees;

D. That the Court grant an equitable lien against all tobacco surcharge funds collected by Cracker Barrel and, to the extent those funds were commingled with other funds, order a disgorgement, unjust enrichment, and/or restitution of an amount of the commingled general fund in an amount proportionate to the surcharge funds collected;

E. That the Court grant a declaratory judgment holding that the acts of Cracker Barrel described herein violate ERISA and applicable law, as well as the terms of the plan;

F. That the Court enter a permanent injunction against Cracker Barrel prohibiting it from collecting tobacco surcharge funds unless and until it revises its surcharges to comply with all ERISA statutory requirements;

G. That the Court order Cracker Barrel to provide all accountings necessary to determine the amounts it must make good to the Plan and to plan participants and beneficiaries;

H. That the Court order the equitable remedy of accounting for profits and disgorge from Cracker Barrel all profits gained by Cracker Barrel by levying the tobacco surcharge;

I. That the Court surcharge against Cracker Barrel all funds it collected in violation of ERISA and the terms of the plan;

J. That the Court find and adjudge that Cracker Barrel is liable to make good to the Plan all losses to the Plan resulting from each breach of its fiduciary duties, to otherwise restore the Plan to the positions it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciaries;

K. That the Court impose a constructive trust on profits received by Cracker Barrel as a result of fiduciary breaches committed by it or for which they are liable, upon which Plaintiff and the class can make claims for equitably vested benefits;

L. That the Court award Plaintiff and the class all damages available at law in an amount to be determined at trial;

M. That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

N. That the Court order the payment of interest to the extent it is allowed by law; and

O. That the Court grant all other equitable, remedial, and legal relief as it deems just and proper under the circumstances.

Dated: August 1, 2025

Respectfully submitted,

*/s/ Drew Legando*
Drew Legando (0084209)
**MERRIMAN LEGANDO & WILLIAMS LLC**
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@merrimanlegal.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, MO. Bar No. 43450
Alexander T. Ricke, MO. Bar No. 65132
Caleb J. Wagner, MO Bar No. 68458
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, MO Bar No. 59343
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
ryan@mcclellandlawfirm.com

*Attorneys for Plaintiff*